FILED
U.S. DISTRICT COURT
IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF TEXAS

MAY 1 1 2006

FOR THE EASTERN DISTRICT OF TEXAS

DAVID J. MALAND, CLERK
BY
SHERMAN DIVISION               DEPUTY _____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | Criminal No. _4:06CR136_ |
| | § | _Schell_ |
| DAVID CARL HARVEY, | § | |
| JESSICA LYNN COULTER, and | § | |
| STACY D. TUCKER | § | |

---

### INDICTMENT

---

THE GRAND JURY CHARGES THAT:

### COUNT 1

> Violation: 18 U.S.C. § 371 (Conspiracy to
> Fraudulently Use Social Security Numbers and
> Access Devices and to Commit Bank Fraud)

AT ALL TIMES MATERIAL TO THIS INDICTMENT:

### A.   **INTRODUCTION**

1. The "William Ross Checking Account" was a checking account in the name of William H. Ross at Wachovia Bank.

2. The "Marc Koval Checking Account" was a checking account in the name of Marc Koval at TIB Bank of the Keys.

3. The "Deepak Rajasekaran access device information" includes the social security number, date of birth, and drivers license numbers belonging to Deepak Rajasekaran of Irving, Texas.

**Indictment**
**HARVEY, COULTER, and TUCKER - Page 1**

4.      The "Abundant Life Church Credit Card Account" was a Visa credit card account issued in the name of Abundant Life Church of God.

5.      The "Jeffery Love Checking Account" was a checking account in the name of Jeffery Love at Wells Fargo Bank.

6.      The "Lexie Farmer Checking Account" was a checking account in the name of Lexie Farmer at Alliance Bank.

7.      The "Tara McNellis Checking Account" was a checking account in the name of Tara McNellis at Bank of America.

8.      The "Tara McNellis Credit Account" was a Visa credit card account in the name of Tara McNellis issued by Bank of America.

9.      The "Stormie Johnson Checking Account" was a checking account in the name of Stephen Sutton and Stormie Johnson at City National Bank.

10.     The "Steven and Cathy Certain Checking Account" was a checking account in the name of Steven and Cathy Certain at Service 1st Credit Union.

11.     The "J.R. Nelson Checking Account" was a checking account in the name of J.R. Nelson at Alliance Bank.

12.     Defendant Stacy D. Tucker was employed by the Galleria Apartments in Greenville, Texas as the apartment manager.

13.     Defendant Jessica Lynn Coulter was employed by Experian Information Systems, Inc. ("Experian"), a credit reporting service company, in Allen, Texas.

## B.      THE CONSPIRACY AND ITS OBJECTS

14. From in or about August 2003, continuing through in or about January 2004, within

the Eastern District of Texas and elsewhere, DAVID CARL HARVEY ("HARVEY"),

JESSICA LYNN COULTER ("COULTER"), and STACY D. TUCKER ("TUCKER"), and

others known to the Grand Jury, did knowingly and willfully combine, conspire, confederate and

agree to commit offenses against the United States, namely:

      (a)     for the purpose of obtaining a thing of value from a person, and for other

purposes, with the intent to deceive, falsely representing a number to be the social security

account number assigned by the Commissioner of Social Security to a person, when in fact such

number is not the social security number assigned by the Commissioner of Social Security to a

person, a violation of Title 42 U.S.C. § 408(a)(7);

      (b)     to knowingly and with intent to defraud use one or more unauthorized access

devices during a one-year period, and by such obtain something of value aggregating $1,000 or

more during such period, a violation of 18 U.S.C. § 1029(a)(2);

      (c)     to knowingly and with intent to defraud effect transactions, with one or more

access devices issued to another person or persons, to receive things of value during a one-year

period the aggregate value of which is equal to or greater than $1,000, a violation of Title 18

U.S.C. § 1029(a)(5); and

      (d)     to knowingly execute and attempt to execute a scheme or artifice to obtain the

moneys, funds, and credits under the custody and control of a financial institution by means of

false or fraudulent pretenses, representations, and promises, a violation of Title 18 U.S.C. §

1344.

## B. MANNER AND MEANS OF THE CONSPIRACY

It was part of the conspiracy that:

**Indictment**
**HARVEY, COULTER, and TUCKER - Page 3**

15.    HARVEY, COULTER, and TUCKER would use credit and checking accounts belonging to other individuals to rent vehicles and equipment, pay their own bills and bills in the names of their associates, and purchase merchandise and services.

16. HARVEY, COULTER, and TUCKER would use Social Security numbers, dates of birth, and checking and credit card account numbers assigned to other individuals to attempt to open credit accounts in the names of those individuals at various merchants.

## C.    OVERT ACTS OF THE CONSPIRACY

17. In furtherance of the conspiracy and to effect the objects thereof, HARVEY, COULTER, and TUCKER committed and caused to be committed the following overt acts in the Eastern District of Texas and elsewhere:

a.    In about August 2003, COULTER obtained names, addresses, dates of birth, bank account numbers, social security numbers, drivers license numbers, and credit card numbers issued to various individuals from Experian.

### The William Ross Checking Account

b.    On or about August 30, 2003, HARVEY and COULTER purchased two Dell laptop computers for $2,994.74 using William Ross's Social Security Number.

c.    On or about September 8, 2003, HARVEY and COULTER paid $464.41 to First Choice Power using the William Ross Checking Account to pay an associate's electric bill.

### The Marc Koval Checing Account

d.    On or about August 28, 2003, HARVEY and COULTER paid $841.31 to Household Credit using the Marc Koval Checking Account to pay an associate's credit card bill.

e.    On or about August 29, 2003, HARVEY and COULTER rented a car from

Enterprise Rent-A-Car.

     f.     On about September 2, 2003, HARVEY attempted to extend the rental agreement at Enterprise Renta-A-Car using the Marc Koval Checking Account, Marc Koval's date of birth, and Marc Koval's driver's license number.

     g.     On or about August 31, 2003, HARVEY and COULTER obtained cellular phone service from Sprint using Marc Koval's social security number, driver's license number, and date of birth.

     h.     On or about September 2, 2003, HARVEY and COULTER paid $108.50 to Cingular Wireless using the Marc Koval Checking Account to pay an associate's cellular phone bill.

     i.     On or about September 3, 2003, HARVEY and COULTER paid $2,150.00 to Sears using the Marc Koval Checking Account to pay COULTER's credit card account.

     j.     On or about September 16, 2003, HARVEY rented two generators from R&K Equipment by providing a fraudulent drivers license and Marc Koval's identifying information, including Koval's drivers license number, phone number, and date of birth.

**The Deepak Rajasekaran Access Device**

     k.     On or about December 11, 2003, HARVEY, COULTER, and TUCKER used the Deepak Rajasekaran access device information to obtain service from Western Wireless/Cellular One.

     l.     On or about January 14, 2004, HARVEY used the Deepak Rajasekaran access device information to attempt to obtain a Dodge Viper from Greenville Chrysler.

**The Abundant Life Church Credit Card Account**

**Indictment**
**HARVEY, COULTER, and TUCKER - Page 5**

m.     On or about December 8, 2003, HARVEY and COULTER used the Abundant Life Church Credit Card Account to obtain property valued at $225.00 with Shell Oil.

n.     On or about December 8, 2003, HARVEY and COULTER attempted to use the Abundant Life Church Credit Card Account to obtain property valued at $337.44.

o.     On or about December 9, 2003 HARVEY and COULTER paid Manley Gas $149.00 using the Abundant Life Church Credit Card Account.

**The Jeffery Love Checking Account**

p.     On or about December 12, 2003, TUCKER took checks for the Jeffery Love Checking Account from Jeffery Love's apartment.

q.     On or about December 10, 2003, check number 1162, in the amount of $1,834.39 drawn on the Jeffery Love Checking Account was negotiated.

r.     On or about December 10, 2003, check number 1164, in the amount of $50.00 drawn on the Jeffery Love Checking Account was negotiated.

s.     On or about December 14, 2003, check number 1041, in the amount of $35.50 drawn on the Jeffery Love Checking Account was negotiated.

t.     On or about December 14, 2003, check number 1044, in the amount of $209.00 drawn on the Jeffery Love Checking Account was negotiated.

u.     On or about December 14, 2003, check number 1049, in the amount of $38.15 drawn on the Jeffery Love Checking Account was negotiated.

v.     On or about December 15, 2003, check number 1051, in the amount of $44.00 drawn on the Jeffery Love Checking Account was negotiated.

w.     On or about December 15, 2003, check number 1054, in the amount of $49.10

drawn on the Jeffery Love Checking Account was negotiated.

    x.      On or about December 15, 2003, check number 1174, in the amount of $200.00

drawn on the Jeffery Love Checking Account was negotiated.

    y.      On or about December 16, 2003, check number 1184, in the amount of $55.10

drawn on the Jeffery Love Checking Account was negotiated.

    z.      On or about December 17, 2003, check number 1188, in the amount of $344.43

drawn on the Jeffery Love Checking Account was negotiated.

**The Lexie Farmer Checking Account**

    aa.      On or about October 5, 2003, COULTER issued check number 242 from the

Lexie Farmer Checking Account in the amount of $1,190.73.

    bb.      On or about October 7, 2003, COULTER issued check number 246 from the

Lexie Farmer Checking Account in the amount of $210.00.

    cc.      On or about October 7, 2003, COULTER issued check number 247 from the

Lexie Farmer Checking Account in the amount of $36.53.

    dd.      On or about October 7, 2003, COULTER issued check number 250 from the

Lexie Farmer Checking Account in the amount of $525.00.

    ee.      On or about October 7, 2003, COULTER issued check number 254 from the

Lexie Farmer Checking Account in the amount of $94.26.

    ff.      On or about October 7, 2003, COULTER issued check number 255 from the

Lexie Farmer Checking Account in the amount of $1,169.07.

    gg.      On or about October 7, 2003, COULTER issued check number 256 from the

Lexie Farmer Checking Account in the amount of $1,104.10.

hh.     On or about October 8, 2003, COULTER issued check number 253 from the Lexie Farmer Checking Account in the amount of $540.17.

ii.     On or about October 9, 2003, COULTER issued check number 261 from the Lexie Farmer Checking Account in the amount of $70.07.

jj.     On or about October 9, 2003, COULTER issued check number 263 from the Lexie Farmer Checking Account in the amount of $174.94.

kk.     On or about October 10, 2003, COULTER issued check number 252 from the Lexie Farmer Checking Account in the amount of $219.50.

ll.     On or about October 10, 2003, COULTER issued check number 257 from the Lexie Farmer Checking Account in the amount of $363.22.

mm.     On or about October 10, 2003, COULTER issued check number 259 from the Lexie Farmer Checking Account in the amount of $425.00.

nn.     On or about October 14, 2003, COULTER issued check number 244 from the Lexie Farmer Checking Account in the amount of $601.86.

oo.     On or about October 14, 2003, COULTER issued check number 251 from the Lexie Farmer Checking Account in the amount of $44.27.

**The Tara McNellis Checking Account**

pp.     On or about December 26, 2003, COULTER or HARVEY issued check number 224 from the Tara McNellis Checking Account in the amount of $1,252.30.

**The Tara McNellis Credit Card Account**

qq.     On or about December 26, 2003, HARVEY and COULTER used the Tara McNellis Credit Card Account to pay $75.00 to the Best Western Inn and Suites.

**The Stormie Johnson Checking Account**

rr.       On or about December 22, 2003, COULTER and HARVEY used check number

575 from the Stormie Johnson Checking Account in the amount of $1,234.01.

**The Steven and Cathy Certain Checking Account**

ss.       In or about January 2004, HARVEY exchanged checks from the Steven and Cathy

Certain Checking Account for methamphetamine from a person known to the grand jury.

**The J.R. Nelson Checking Account**

tt.       In or about January 2004, HARVEY exchanged checks from the J.R. Nelson

Checking Account for methamphetamine from a person known to the grand jury.

## COUNT 2

**Violation:**  18 U.S.C. §1029(a)(5) (Fraudulent Use
of Unauthorized Access Devices)

From on or about August 28, 2003, through on or about September 16, 2003, in the

Eastern District of Texas and elsewhere, DAVID CARL HARVEY and JESSICA LYNN

COULTER did knowingly and with intent to defraud, effect transactions with one or more access

devices issued to Mark Koval, to receive things of value during a one-year period, to-wit:  two

power generators, car rental, cellular phone service, and cellular phones the aggregate value of

which was equal to or greater than $1,000.

All in violation of Title 18 U.S.C. § 1029(a)(5).

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

### Pursuant to Title 18, United States Code, Section 982(a)(2)(B)

As the result of committing a violation of Title 18, United States Code, Sections 371 and 1029 as alleged in this Indictment, Defendants shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 982 (a)(2)(B) all property constituting, or derived from proceeds obtained directly or indirectly, as a result of such violations traceable to the aforementioned violations, including but not limited to the following:

### Cash Proceeds

Approximately $109,832.04 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the foregoing offenses alleged in this Indictment.

### Substitute Assets

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants -

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with a third person;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(a)(2)(B) and 21 U.S.C. § 853(p),

to seek forfeiture of any other property of Defendants up to the value of the above forfeitable

property, including but not limited to all property, both real and personal, owned by Defendants.

By virtue of the commission of the offenses alleged in this Indictment, any and all interest

the Defendants have in the above-described property is vested in the United States and hereby

forfeited to the United States pursuant to 18 U.S.C. § 982(a)(2)(B).

A TRUE BILL

FOREPERSON OF THE GRAND JURY

MATTHEW D. ORWIG
United States Attorney

TERRI L. HAGAN
Assistant U.S. Attorney

**Indictment**
**HARVEY, COULTER, and TUCKER - Page 12**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | Criminal No. _____ |
| | § | |
| DAVID CARL HARVEY, | § | |
| JESSICA LYNN COULTER, and | § | |
| STACY D. TUCKER | § | |

## NOTICE OF PENALTY

### COUNT 1

Violation:      18 U.S.C. § 371
Conspiracy to Fraudulently Use Social Security Numbers and Access
Devices and to Commit Bank Fraud

Penalty:      A fine of not more than $250,000 or twice the
amount of the gross gain to Defendant or gross loss
to one other than Defendant and/or imprisonment
for not more than five (5) years

Special Assessment:   $100.00

Supervised Release:   3 years

### COUNT 2

Violation:      18 U.S.C. § 1029(a)(5)
Fraudulent Use of Unauthorized Access Devices

Penalty:      A fine of not more than $250,000 or twice the
amount of the gross gain to Defendant or gross loss
to one other than Defendant and/or  imprisonment
for not more than fifteen (15) years

Special Assessment:   $100.00

Supervised Release:   3 years

Notice of Penalty
HARVEY, COULTER, and TUCKER - Solo Page